NOT FOR PUBLICATION                                                                                                         CLOSED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MIDDLESEX SURGERY CENTER, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 13-112 (SRC) |
| v. : | |
| : | OPINION |
| HORIZON, ABC Benefit Plans 1-10; Heavy : | |
| and General Laborers' Local Union 472 and : | |
| Local Union 172 of the New Jersey Welfare : | |
| Fund, and John/Jane Does Inc./LLC 1-10, : | |
| : | |
| Defendants. : | |

**CHESLER**, District Judge

This matter comes before the Court on the motion of Defendant Heavy and General Laborers' Local Union 472 and Local Union 172 of the New Jersey Welfare Fund ("Defendant" or "Fund") to dismiss the Complaint. (Docket Entry 6) Plaintiff Middlesex Surgery Center ("Plaintiff" or "MSC") has opposed the motion. (Docket Entry 9) The Court will rule on the papers submitted, and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant the motion and dismiss the Complaint with prejudice.

I.     THE FACTS[1]

---

[1] In a Rule 12(b)(6) motion, the Court is limited in its review primarily to the complaint and a few basic documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Accordingly, the Court's statement of the facts is derived from the allegations contained in the Complaint (Docket Entry 1, Ex. A) and does not represent factual findings by the Court.

This lawsuit arises out of a billing dispute between Plaintiff, a healthcare provider, and Defendant, a self-funded multi-employer welfare benefit fund, for services provided to one of the Fund's insureds (identified only as "Laura M."). According to MSC, it provided "medically reasonable and necessary services" to Laura M. on May 26, 2011. (Compl. ¶8) On behalf of Laura M., MSC then filed a claim with the Fund in the amount of $42,000, which the Fund denied on the grounds that the procedure was not medically necessary.

MSC has brought suit alleging three causes of action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002, et seq., as well as a state law breach of contract claim. MSC seeks damages, interest, costs, and attorneys' fees.

II.   DISCUSSION

    A.   **Standard of Review**

A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true. Twombly, 550 U.S. at 555; Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The Third Circuit, following Twombly and Iqbal, has held that the pleading standard of Rule 8(a) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.'" Phillips, 515 F.3d at 234. In a Rule 12(b)(6) motion, the Court is

limited in its review to a few basic documents: the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents.  See White Consol. Indus., 998 F.2d at 1196.

### B. Breach of Contract Claim

The Fund seeks to dismiss MSC's breach of contract claim on the grounds that it is preempted by ERISA.  ERISA preemption of state law causes of action is well-established.  See Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004).  ERISA § 502(a) is the statute's civil enforcement mechanism, and subsection (1)(B) expressly grants a plan participant or beneficiary the right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The Supreme Court has held that "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  Davila, 542 U.S. at 209 (quoting Metropolitan Life, 481 U.S. at 65-66).  Indeed, the statute itself contains a preemption provision.  ERISA § 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  Suits brought by participants or beneficiaries of ERISA plans concerning matters that "relate to" those plans are governed by the cause of action provided by ERISA § 502(a).  Davila, 542 U.S. at 208-09.

In this case, MSC is suing not as a participant or beneficiary, but as an assignee. Nevertheless, MSC seeks to recover benefits it claims it is entitled to under Laura M.'s ERISA covered plans.  Clearly, the breach of contract claim "relates to" the plan.  See id.  In its opposition brief, MSC has conceded the point and voluntarily abandoned the claim.  The Court

will therefore dismiss the breach of contract claim with prejudice.

      **C.**     **ERISA Claims**

The Fund seeks to dismiss the remainder of the Complaint on the grounds that MSC has no power to sue under ERISA. The Court agrees.

It is well-established that the ability to sue under ERISA § 502(a), the statute's civil enforcement mechanism, is generally limited to participants or beneficiaries of ERISA plans. 29 U.S.C. § 1132(a); Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 399-400 (3d Cir. 2004). MSC, who is neither a participant nor a beneficiary, argues that it may sue as an assignee. MSC alleges that it received a valid assignment from Laura M., allowing it to stand in her shoes and pursue the instant action. As this Court recognized in Franco v. Conn. Gen. Life Ins. Co., "the Third Circuit has not settled the question of standing to sue under ERISA § 502 by assignment." 818 F. Supp. 2d 792, 808 (D.N.J. 2011) (citing Pascack Valley Hosp., 388 F.3d at 401; Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan, 143 F.App'x 433, 435 (3d Cir. 2005)). But a number of other circuits have recognized a plaintiff's right to sue under § 502 by assignment. Tango Transport v. Healthcare Fin. Servs., 322 F.3d 888, 891 (5th Cir. 2003); Morlan v. Universal Guar. Lif. Ins. Co., 298 F. 3d 609, 614-15 (7th Cir. 2002); Sys. Council Em-3 v. AT & T Corp., 333 U.S. App. D.C. 63, 159 F.3d 1376, 1383 (D.C. Circuit 1998); City of Hope Nat'l Med. Ctr. v. Healthplus, Inc., 156 F.3d 223, 226 (1st Circ. 1998); St. Francis Reg'l Med. Ctr. v. Blue Cross and Blue Shield of Kan., 49 F.3d 1460, 1464-65 (10th Cir. 1995); see also Pascack Valley Hosp., 388 F.3d at 401 (stating that "almost every circuit that has addressed the issue has ruled that a health care provider can assert a claim under § 502(a) when a beneficiary or participant has assigned to the provider the

individual's benefits under the plan"). Courts within the District of New Jersey have also concluded that a provider may have derivative standing under § 502. Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., No. 06-928, 2007 U.S. Dist. LEXIS 61137, *9-10 (D.N.J. Aug. 20, 2007); Ambulatory Surgical Ctr. of N.J. v. Horizon Healthcare Servs., No. 07-2538, 2008 U.S. Dist. LEXIS 13370 (D.N.J. Feb. 21, 2008). This Court will therefore assume, as it did in Franco, "that providers may assert such a claim 'where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan.'" 818 F. Supp. 2d at 808 (quoting Pascack Valley Hosp., 388 F.3d at 401).

According to Black's Law Dictionary (9th ed. 2009), "assignment" is a term of art meaning the "transfer of rights or property." The Third Circuit, providing a statement of New Jersey law, held that "[a]n assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires right to such performance." In re Jason Realty, L.P., 59 F.3d 423, 427 (3d Cir. 1995) (citing Restatement (Second) of Contracts § 317 (1981) and Aronsohn v. Mandara, 98 N.J. 92, 98 (1984)). According to the leading treatise on contract law, "the elements of an effective assignment include a sufficient description of the subject matter to render it capable of identification, and delivery of the subject matter, with the intent to make an immediate and complete transfer of all right, title, and interest in and to the subject matter to the assignee." 29 Williston on Contracts § 74:3 (4th ed. 2012); see also K. Woodmere Assocs., L.P. v. Menk Corp., 316 N.J.Super. 306, 314 (App. Div. 1998) (quoting Williston for the elements of a valid assignment). A valid assignment "transfers the whole of the interest in the right." Presley's Estate v. Russen, 513 F. Supp. 1339, 1350 (D.N.J. 1981). Only an assignment that

clearly reflects the assignor's intent to transfer his rights will be effective. Tirgan v. Mega Life & Health Ins., 304 N.J. Super. 385, 390 (App. Div. 1997); Restatement (Second) of Contracts § 324 (1981). Moreover, "[f]or an assignment to be created [under New Jersey law], the effect must be that the assignor retains no power to revoke the assignment." In re Fontaine, 231 B.R. 1, 4 (Bankr. D.N.J. 1999) (quoting Sheeran v. Sitren, 168 N.J.Super. 402, 414 (Law Div.1979)). In other words, as a result of a valid assignment, the assignor loses all control over the subject matter of the assignment and all interest in the right assigned. Sheeran, 168 N.J.Super. at 414. To determine the patient-assignor's intent, the Court applies an objective standard and properly looks to the language of the intake form provision as the "strongest objective manifestation of intent." Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 76 (3d Cir. 2011); see also In re Jason Realty, 59 F.3d at 427 (holding that "[t]he precise wording determines the effect of the assignment."). The question before the Court, then, is whether MSC has adequately pled that it received such an assignment in this case.

If MSC were correct that it has standing to sue under ERISA because it received a valid assignments of benefits, Laura M. would retain no legal right to pursue the Fund herself – only MSC could pursue the Fund, regardless of whether or not MSC balance billed[2] Laura M for the services performed. The purported assignment provides as follows:

> I, Laura M., by marking and signing below, agree to representation by [MSC] in an appeal of an adverse UM determination as allowed by N.J.S.A. 26:2S-11, and release of personal health information to [the

---

[2] In the context of the healthcare industry, balance billing is the practice by a medical provider of billing a patient for the difference between the provider's actual charge and the amount reimbursed under the patient's health insurance benefits plan. Under balance billing, the patient is financially responsible to the provider for his or her co-payment obligation under the plan, plus any amount of the actual charge that exceeds the covered amount under the plan.

> New Jersey Department of Banking and Insurance], its Contractors for the Independent Health Care Appeals Program, and independent contractors reviewing this appeal. My consent to representation and authorization of release of information expires in 24 months, but I may revoke it sooner.

(P.'s Opp. Br. 8-10) There is simply nothing in the above language that suggests that the parties intended a full transfer of rights to take place. MSC argues that "although the language is obviously intended to conform and comply with the requirements of an appeal through DOBI, it is not limited to DOBI appeals." (P's Opp. Br. 9) Plaintiff argues that the plain language of the executed form "provides for an assignment for an appeal – not merely a DOBI appeal." (Id.) But Plaintiff's effort to establish a valid assignment by describing this lawsuit as an "appeal" is unpersuasive. The Court does not agree that the quoted language clearly constitutes an assignment. On the contrary, the exact opposite is true – the language reads as a grant of a power of attorney for the limited purposes of allowing MSC to *represent* the patient-insured in appealing the Fund's decision through the Department of Banking and Insurance's ("DOBI") Independent Health Care Appeals Program.[3]

MSC relies heavily on Premier Health Ctr., P.C. v. UnitedHealth Group, No. 11-425, 2012 U.S. Dist. LEXIS 44878 (D.N.J. Mar. 30, 2012), for the proposition that the authorization form in this case constitutes a valid assignment of rights. There, the Court held that the provider plaintiffs' quotation of assignment language in the complaint was sufficient to establish derivative standing to sue under § 502 of ERISA. Id. at *19. But unlike the provision at issue in this case, the assignment considered in Premier expressly stated that "THIS IS A DIRECT

---

[3] The process by which covered persons and/or health care providers may appeal an adverse claim decision is set forth at N.J.S.A. 26:2S-11.

ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY." Id. at *18. Therefore, Premier Health does little to advance Plaintiff's claim to derivative standing.

MSC also argues that it is inconsistent for the Fund to cast doubt on MSC's power to sue as an ERISA assignee, since the Fund removed this case on the basis that the ERISA claims established federal question jurisdiction. But the face of the Complaint asserts three ERISA claims. The case therefore clearly "aris[es] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and, being within the original jurisdiction of this Court, it is removable, 28 U.S.C. § 1441.

MSC also vigorously argues that the Fund has waived, by its conduct, any defense that MSC lacks a valid assignment. MSC contends that the Fund and MSC engaged in a claims review process, and at no time did the Fund ever assert that MSC was not entitled to pursue an appeal on Laura M.'s behalf. According to MSC, the Fund's omission constitutes a knowing waiver of any objection to MSC's ability to maintain the instant action. MSC cites a number of cases purporting to stand for the proposition that a "defective assignment may be waived by a written instrument, a course of dealing, or even passive conduct." (P.'s Br. 11) But none of Plaintiff's authorities support the view that a plaintiff may acquire ERISA standing through "waiver" of a defective assignment. Indeed, since it is generally a prerequisite under § 502(a) that a plaintiff be either a "participant" or a "beneficiary" of an ERISA covered plan – and derivative standing has only been recognized in cases where there is a valid transfer of rights – it is doubtful that a plaintiff can acquire standing by virtue of a defendant's acquiescence. Nevertheless, even if § 502(a) permitted "standing by waiver," there is nothing inconsistent about the Fund objecting to Plaintiff's ERISA standing after having engaged with MSC in a pre-suit

claim review process. Whether Plaintiff had the right to submit a claim and pursue a DOBI appeal on Laura M.'s behalf is a separate issue entirely from whether Plaintiff has the right to sue under § 502(a). In recognizing the former, Defendant has not acquiesced in the latter. The Fund's position is that the authorization form only granted MSC the right to represent Laura M. in submitting a claim and pursuing a potential DOBI appeal but did not rise to the level of a full assignment of her ERISA covered benefits. The Fund's position is not only internally consistent, it is *strongly* supported by the plain language of the authorization form.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that the Complaint must be dismissed with prejudice for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). An appropriate Order accompanies this Opinion.

      s/Stanley R. Chesler  
      STANLEY R. CHESLER  
      United States District Judge

DATED: February 27, 2013